UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

ALVIN LYTLE,

    Plaintiff,

v.

UNITED STATES OF AMERICA, ET AL.,

    Defendants.

Civil Action No. 5:18-059-KKC

**MEMORANDUM OPINION AND ORDER**

\*\*\* \*\*\* \*\*\* \*\*\*

Alvin Lytle was recently a prisoner at the Federal Medical Center (FMC) in Lexington, Kentucky. Proceeding without a lawyer, Lytle filed a complaint challenging the sufficiency of the medical care he received at the prison. [R. 1]. Lytle asserts civil rights claims against two prison medical professionals, as well as a claim against the United States of America pursuant to the Federal Tort Claims Act (FTCA). The defendants have now filed a motion to dismiss Lytle's claims or, in the alternative, a motion for summary judgment [R. 27], Lytle has filed his response [R. 33], and the defendants have filed their reply [R. 34]. This matter is therefore ripe for a decision. For the reasons set forth below, the Court will grant the defendants' dispositive motion in part and deny it in part. The Court will then refer this case to a Magistrate Judge for further proceedings, including the initiation of discovery.

I.

Lytle arrived at FMC-Lexington in 2014 with multiple health problems, including diabetes. [R. 27-3 at 2]. Lytle was assigned to Dr. Terre Adams's caseload, meaning that Dr. Adams was ultimately responsible for the full range of primary medical care that the prison provided Lytle.

[*Id.* at 1]. In November 2016, Dr. Adams personally evaluated Lytle. [*Id*. at 2]. Based on Lytle's history of diabetes and a previous non-healing foot ulcer, Dr. Adams scheduled Lytle for a diabetic foot examination at the prison's physical therapy department. [*Id*.]. A physical therapist conducted the exam and noted that Lytle had dry skin on his lower left extremity and a callus on the right fifth metatarsal head. [*Id.* at 18]. That said, Lytle had no pre-ulcers or ulcers, and his examination was otherwise unremarkable. [*Id.* at 2, 18].

On February 28, 2017, Lytle went to sick call and complained that he had been experiencing pain and redness in his right great toe for three days. [R. 27-3 at 2, 20-21]. Practitioner Tony Banta evaluated Lytle and determined that he had no drainage or bleeding, his skin was intact, and he had a full range of motion. [*Id.* at 23-24]. However, Lytle did have swelling, erythema, and tenderness, and the area was not warm to the touch. [*Id.* at 24]. Practitioner Banta also noted that Lytle had a "[s]imilar incident previously in [his] l[eft] great toe resulting in partial amputation." [*Id.* at 23]. Practitioner Banta prescribed Lytle Bactrim for 10 days and acetaminophen/codeine for three days, ordered him a uric acid test, and scheduled him for a follow-up examination three days later. [*Id.* at 24]. Dr. Adams then reviewed Practitioner Banta's clinical notes and cosigned on the treatment he provided to Lytle. [*Id.* at 26].

Lytle alleges in documents attached to his complaint that, at some point prior to March 1, 2017, he spoke to Dr. Adams and said that he thought his foot was infected and that he needed to go to the hospital. [R. 1-2 at 3]. According to Lytle, Dr. Adams told Lytle he would "not be going to the hospital" and that "[a]nything they can do there, we can do here." [*Id.*].

From March 1, 2017 until March 7, 2017, FMC-Lexington was on a modified operations status. [R. 27-3 at 2]. As a result, prison officials cancelled medical appointments during that time, including Lytle's March 3, 2017 follow-up examination. [*Id*. at 2-3]. Still, prison medical staff

made rounds in each housing unit twice per day, and on March 4, 2017, the staff renewed Lytle's acetaminophen/codeine prescription for three more days. [*Id.* at 3, 27]. Lytle acknowledges that he was "given extra antibiotics" while the prison was on modified operations, but he also claims that he had to "endure excruciating pain" and his "condition was deteriorating" during this time. [R. 1-2 at 3].

On March 7, 2017, the prison returned to normal operations, and Practitioner Banta examined Lytle in the clinic. [R. 27-3 at 3, 28]. Lytle indicated that he had a sharp pain in his right great toe but denied that he had any bleeding or draining. [*Id.* at 28]. Practitioner Banta also noticed that Lytle had no areas of active bleeding or drainage, but he did see that Lytle still had erythema and a "rash and other nonspecific skin eruption." [*Id.* at 28-29]. As a result, Practitioner Banta prescribed Lytle oral doxycycline for 14 days and ceftriaxone intramuscular injections for 3 days, with the first injection given in the clinic. [*Id.* at 29].

On March 8, 2018, Practitioner Banta renewed Lytle's acetaminophen/codeine prescription for three more days, and Dr. Adams cosigned the prescription renewal. [R. 27-3 at 31]. Practitioner Banta also ordered radiographs of Lytle's right foot due to his edema and pain. [*Id.* at 33].

On March 9, 2018, Lytle returned to the clinic and complained that his right great toe was bleeding and draining. [R. 27-3 at 3, 35]. Practitioner Banta checked Lytle's temperature, pulse, respiratory rate, blood pressure, and oxygen saturation level. [*Id.* at 35-36]. Practitioner Banta also examined Lytle's toe and took a culture of his wound. [*Id.* at 36]. Practitioner Banta determined that Lytle's toe infection, pain, and appearance had all worsened, and he specifically recalled Lytle's past partial amputation of his left great toe. [*Id.*]. Practitioner Banta discussed Lytle's condition and history with Dr. Adams and, together, they decided to transfer Lytle to the

3

University of Kentucky Medical Center for further evaluation and treatment. [*Id.* at 3, 36-38]. Lytle was admitted to the University of Kentucky Medical Center on March 9, 2017, and doctors amputated Lytle's great right toe the next day. [*Id.* at 39-47]. Lytle remained in the hospital until March 13, 2017, when he returned back to FMC-Lexington. [*Id.* at 47].

Lytle disputes this timeline in his complaint. To be sure, Lytle acknowledges that Practitioner Banta examined and treated him on March 9, 2017. [R. 1 at 2]. However, Lytle claims that on that date he "urged" Practitioner Banta to "take him to the local hospital because he was experiencing extreme pains, but that Practitioner Banta refused, saying, 'Anything the hospital can do for you, we can do for you.'" [*Id.*]. Lytle then claims that he returned to the prison clinic on March 10, 2017, and only then did Practitioner Banta decide to send him to the hospital. [*Id.*]. Lytle's medical records, however, show that he was admitted to the University of Kentucky Medical Center on March 9, 2017, had his surgery on March 10, 2017, and returned to FMC-Lexington on March 13, 2017. [R. 27-3 at 39-47].

Shortly thereafter, Lytle filed an administrative tort claim with the Bureau of Prisons. [Rs. 1-2, 1-3]. Lytle claimed, among other things, that the loss of his great right toe was "the result of negligence, malpractice, refusal of medical care, and deliberate indifference." [R. 1-2 at 2]. The Bureau of Prisons, however, denied Lytle relief. [R. 1-4 at 2].

Lytle then filed this lawsuit. [R. 1]. Lytle's complaint is difficult to follow; however, construing his *pro se* submission liberally, it appears that Lytle is asserting two types of claims. First, Lytle appears to be bringing Eighth Amendment deliberate indifference claims against Dr. Adams and Practitioner Banta; after all, Lytle names both of these individuals as defendants, alleges they "failed to properly handle [his] ongoing pain and suffering from the infection," and attaches exhaustion documents in which he claims that they displayed "deliberate indifference" to

4

his medical needs [R. 1 at 5, R. 1-2 at 2]. Second, Lytle claims these individuals committed medical malpractice and, as a result, the United States is liable pursuant to the FTCA.[1] [R. 1 at 3-7]. Ultimately, the crux of Lytle's complaint and attached exhibits is that Dr. Adams and Practitioner Banta did not properly treat his toe because, among other things, they failed to send him to the hospital sooner despite his repeated requests.

The defendants have now filed a motion to dismiss Lytle's claims or, in the alternative, a motion for summary judgment [R. 27], Lytle has filed his response [R. 33], and the defendants have filed their reply [R. 34]. This matter is therefore ripe for a decision.

II.

As an initial matter, the Court will treat the defendants' motion as one for summary judgment because they have attached and relied upon documents and declarations extrinsic to the pleadings. *See* Fed. R. Civ. P. 12(d); *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010). Ultimately, the Court will grant summary judgment in favor of Dr. Adams and Practitioner Banta with respect to Lytle's Eighth Amendment claims. However, the Court will deny without prejudice the United States' motion for summary judgment on Lytle's FTCA claim.

A.

Lytle's Eighth Amendment claims against Dr. Adams and Practitioner Banta are without merit. It is true that, under certain circumstances, a prisoner can establish an Eighth Amendment

---

[1] It appears that Lytle is actually trying to assert multiple, distinct medical malpractice claims. After all, Lytle separately lists one claim for "negligence," one claim for "carelessness," and one claim for "medical malpractice." [R. 1 at 3]. These terms, however, are simply multiple ways of labeling the same cause of action—a claim against the United States pursuant to the FTCA based on the alleged malpractice (i.e., negligence) committed by medical professionals at the prison. And while Lytle also suggests he is bringing a FTCA claim based on "negligent infliction of emotional distress," in Kentucky, such claims are "analyzed in accordance with common law negligence." *Gaunce v. CL Medical, Inc.*, No. 5:14-cv-346-DCR, 2015 WL 893569, at *4 (E.D. Ky. 2015). Thus, while Lytle provides a variety of different labels for his FTCA claim, it is simply one alleging medical malpractice. Finally, although Lytle also mentions a "negligent supervision" claim in his "FTCA complaint," such a claim is not cognizable because supervising employees is generally a discretionary function that falls outside of the government's waiver of sovereign immunity under the FTCA. *See Snyder v. United States*, 590 F. App'x 505, 509-10 (6th Cir. 2014).

5

violation if he is provided inadequate medical care. However, that prisoner must satisfy two components—one objective and one subjective. *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005). To satisfy the objective component, the prisoner must allege a sufficiently serious medical need. *Id.* To satisfy the subjective component, the prisoner must allege facts which "show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id.* (quoting *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)).

Here, even if the Court assumes that Lytle has alleged and established a sufficiently serious medical need, he has not demonstrated that either Dr. Adams or Practitioner Banta acted with the culpable state of mind required to satisfy the subjective component of a deliberate indifference claim. As an initial matter, it does not appear that Lytle has even alleged in his complaint that either medical professional acted with such a mental state. Moreover, the undisputed evidence that Dr. Adams and Practitioner Banta put forth shows that they were extensively involved in caring for Lytle. Indeed, Practitioner Banta examined Lytle on multiple occasions in a short time period; ordered him new medications; renewed his previous medications; ordered him a uric acid test and radiographs; administered an intramuscular injection and prescribed additional injections; and scheduled him for multiple appointments. [R. 27-3]. Likewise, Dr. Adams personally evaluated Lytle, proactively scheduled him for a diabetic foot examination at the prison's physical therapy department, ordered him multiple lab tests, and regularly reviewed and cosigned his medical records. [*Id.*]. Given this extensive evidence, it is clear that neither Dr. Adams nor Practitioner Banta displayed deliberate indifference to Lytle's medical needs.

Lytle nevertheless claims that Dr. Adams and Practitioner Banta "failed to properly handle [his] ongoing pain and suffering from the infection." [R. 1 at 5]. Lytle, however, does not dispute

that Dr. Adams and Practitioner Banta provided him with medical care, and the United States Court of Appeals for the Sixth Circuit has made it clear that, where a prisoner has received medical attention and the dispute is simply over the adequacy of the treatment he received, such claims are not cognizable under the Eighth Amendment. *See Graham ex. rel. Estate of Graham v. Cty. of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004) (citing *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976)). To be sure, Lytle maintains that Dr. Adams and Practitioner Banta should have sent him to the hospital sooner instead of continuing to treat him at the prison's clinic. But the Sixth Circuit has repeatedly recognized that a mere disagreement over the proper course of treatment does not give rise to a constitutional claim of deliberate indifference. *See Roller v. Dankwa*, No. 17-6201, 2018 WL 5018507, *2 (6th Cir. 2018); *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017). Thus, the Court will grant summary judgment in favor of Dr. Adams and Practitioner Banta with respect to Lytle's Eighth Amendment claims.

B.

The Court, however, will deny without prejudice the United States' motion for summary judgment on Lytle's medical malpractice claim brought pursuant to the FTCA. That is because Lytle has not yet had the opportunity to gather the expert testimony he needs to establish his claim.

The United States is correct that, under Kentucky law, a plaintiff is generally required to put forth expert testimony to establish the relevant standard of care, any breach of that standard, causation, and the resulting injury. *See Blankenship v. Collier*, 302 S.W.3d 665, 667, 675 (Ky. 2010); *Jackson v. Ghayoumi*, 419 S.W.3d 40, 45 (Ky. Ct. App. 2012). Moreover, the Kentucky courts have clearly said that, "[t]o survive a motion for summary judgment in a medical malpractice case in which a medical expert is required, the plaintiff must produce expert testimony

or summary judgment is proper." *Andrew v. Begley*, 203 S.W.3d 165, 170 (Ky. Ct. App. 2006). As the United States points out, Lytle has not yet provided expert testimony to support his claim.

The United States is also correct that the "common knowledge" exception to the expert witness rule would likely not apply to Lytle's claim, despite his arguments to the contrary. That is because the exception only applies in situations in which "any layman is competent to pass judgment and conclude from common experience that such things do not happen if there has been proper skill and care." *Id.* In fact, the exception is "illustrated by cases where the surgeon leaves a foreign object in the body or removes or injures an inappropriate part of the anatomy." *Id.* This case does not appear to be as clear cut; after all, Lytle's principal claim is that Dr. Adams and Practitioner Banta should have sent him to the hospital sooner instead of continuing to treat him at the prison's clinic. This Court has recognized that such "delay-based allegations . . . are fundamentally different from a surgeon leaving a foreign object in a person or operating on the wrong part of the body." *Earle v. United States*, No. 6:13-cv-184, 2016 WL 8814363, *6 (E.D. Ky. 2016). The Kentucky courts have said essentially the same thing. *See, e.g., Jones v. Gaes*, No. 2009-SC-780, 2011 WL 1642225, at *3 (Ky. 2011) ("Absent expert testimony, a layperson is not competent to determine whether the alleged delay by Dr. Jones in recognizing and treating Gaes's perforated colon was the proximate cause of her pain and suffering, the colostomy procedure, or her ongoing medical problems."). Thus, Lytle needs expert testimony to establish his claim.

Still, given the unique facts of this case, it would be premature to grant summary judgment at this stage in the litigation. After all, "[t]he general rule is that summary judgment is improper if the non-movant is not afforded a sufficient opportunity for discovery." *Vance v. United States*, 90 F.3d 1145, 1148 (6th Cir. 1996) (citations omitted). Here, Lytle has not yet had the opportunity

8

to engage in such discovery, despite suggesting that certain individuals, including his treating physician at the University of Kentucky Medical Center, could provide him with the expert testimony he needs to support his claim. *See* R. 1 at ¶¶ 21, 33, 46. It is also possible that one of Lytle's own doctors would testify to the standard of treatment for his condition and to whether, in his expert opinion, that standard was breached in this case. *See Vance*, 90 F.3d at 1145 ("[T]he necessary expert testimony may be supplied by the defendant's admissions during discovery, or through medical evidence obtained from other treating physicians."). In short, while the United States' arguments are well taken, it would be premature to grant summary judgment in its favor at this stage in the litigation.

## III.

In light of the foregoing analysis, it is hereby **ORDERED** as follows:

1. The defendants' motion to dismiss or, in the alternative, motion for summary judgment [R. 27] is **GRANTED IN PART** and **DENIED IN PART**.

2. The Court **GRANTS** summary judgment in favor of Defendants Dr. Terre Adams and Practitioner Tony Banta with respect to Plaintiff Alvin Lytle's Eighth Amendment deliberate indifference claims.

3. The Court **DENIES** without prejudice the United States' request for summary judgment on Lytle's medical malpractice claim brought pursuant to the FTCA. That claim may proceed.

4. The Court **DENIES** the defendants' dispositive motion [R. 27] in all other respects.

5. Pursuant to 28 U.S.C. § 636(b), this matter is **REFERRED** to a United States Magistrate Judge to conduct all further pretrial proceedings, including overseeing

discovery and preparing proposed findings of fact and recommendations on any future dispositive motions.

6. The Clerk of the Court shall **ASSIGN** this matter to a Magistrate Judge.

Dated October 23, 2018.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY